IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-01989-RPM

STANDARD BANK, PLC,

    Plaintiff,

v.

RUNGE, INC., f/k/a RUNGE MINING, INC., and d/b/a PINCOCK, ALLEN & HOLT

    Defendant.
_____

MEMORANDUM DECISION
_____

The plaintiff, Standard Bank, PLC, (Standard Bank) brought this action to recover its losses from loans to affiliates of Bronco Energy Fund, Inc., (Bronco) for financing acquisition and operation of a coal mine in Hazleton, Indiana, from the defendant Runge, Inc., f/k/a Runge Mining, Inc., and d/b/a Pincock, Allen & Holt (PAH) claiming professional negligence and negligent misrepresentation in its independent engineer's due diligence report on which Standard claims it relied in making those loans.  Because the relationship of these parties is governed by a contract entered into between PAH and Bronco, the defendant's motion for summary judgment of dismissal is granted.

There is no dispute about the core facts giving rise to this dispute.  In 2005, Bronco sought financing to buy from the shareholders of a company called White River Coal the Hazelton Coal Mine.  The Royal Bank of Scotland (RBS) proposed financing and required an independent engineering evaluation of the mine which had been operating for a short time.

On July 12, 2005, PAH sent a proposal to do the technical due diligence for Bronco. (Exhibit J). The terms of the offer provided for a prepayment of $35,000 to begin work and provided a cost estimate. It also includes terms and conditions including the following paragraph:

> 6. LIMITATION OF LIABILITY. CLIENT expressly agrees that to the fullest extent permitted by law, PAH's maximum liability to CLIENT for claims arising from PAH's professional acts, errors, or omissions, shall be the amount of the fee paid PAH for professional services or $50,000, whichever is greater. In the event CLIENT desires a higher limitation of liability, PAH may increase this limit for a fee commensurate with the increased risk to PAH, and this paragraph will be amended accordingly. As used in this section, the term "liability" means liability of any kind, whether in contract (including breach of warranty), in tort (including negligence), in strict liability, for indemnity and otherwise, for any and all injuries, claims, losses, expenses, or damages whatsoever arising out of or in any way related to PAH's services and the services of PAH's subcontractors, consultants, associates, agents, officers, directors and employees from any cause or causes. PAH shall not be liable for any claims of loss of profits or any other indirect, special incidental, or consequential damages of any nature whatsoever.

The proposal included a provision for the applicability of Colorado law and a Colorado forum.

PAH received the $35,000 prepayment by wire transfer from Bronco and immediately began work. It produced a report, dated August 22, 2005. (Exhibit Z). On September 26, 2005, the day before the scheduled closing of the transaction, RBS refused to go forward.

On September 28, 2005, an internal memorandum of Standard Bank describes the opportunity to replace RBS and describes a suggested financing facility based on preliminary due diligence and the report provided by PAH. (Exhibit CC). Michael Hutchings of Standard Bank contacted PAH to inform it of Standard Bank's intention to

replace RBS in this financing. Beginning November 18, 2005, Mr. Hutchings communicated with Casey Kaptur of PAH concerning requested information to be included in a new report, and, under date of November 22, 2005, PAH wrote a report describing it as prepared for "Standard PLC." (Exhibit II). In the executive summary section of that report, PAH said that it developed a risk analysis of Hazelton for Bronco. (Exhibit II, page PAH02080).

In an e-mail from Mr. Hutchings to Mr. Kaptur on Tuesday, January 10, 2006, Mr. Hutchings requested revisions in the PAH report and included the following paragraph:

> I know that you were trying to revise the language to become something that worked for our syndication, but we can't say that Bronco retained you - the other banks may then think that you are not sufficiently independent. We can simply say that you were retained on behalf of Standard and the other banks to conduct due diligence, or something similar. We just need to take out the specific comment that Bronco retained PAH. I've drafted some language that would work in the attached file, but this is by no means the only option. Take a look at this and give me a call at 914-241-2831 if you would like to discuss.

(Exhibit KK, PAH01368).

As a result, PAH issued a report dated January 10, 2006, as prepared for Standard Bank Plc and included the following paragraph:

> Bronco Energy Fund, Inc. (Bronco) is contemplating the purchase of the Hazleton Mine (Hazleton), an underground coal mine located in southwestern Indiana from its current owner, White River Coal, Inc. (WRC), of Evansville, Indiana, for a price of $30.0 million. Standard Bank Plc (Standard) is now considering financing a portion of the acquisition cost for Bronco. The consulting engineering firm of Pincock, Allen & Holt, Inc. (PAH), a division of Runge, Inc. (Runge), was retained as an Independent Engineer (IE) to perform technical and commercial due diligence on the Hazleton Mine on behalf of Standard and other potential lenders, PAH, in its role as IE, intends that this report will be used by
>
> Standard and the other potential lenders as they evaluate the merits of the Hazleton venture.

(Exhibit LL, page PAH06157).

The transaction closed on December 29, 2005, and as shown in the Funds Flow Memorandum from the closing, Standard Bank paid Bronco's transaction costs, including a wire transfer to PAH of $60,252.44. (Exhibit JJ, page SB-PAH0075974).

Minutes of a credit committee meeting of Standard Bank on March 19, 2006, indicate that the PAH report is flawed and Standard Bank then retained John T. Boyd Company to do an independent evaluation on April 18, 2006. Boyd's proposal includes in standard terms and conditions, the following limitation of liability:

> Limitation of Liability The total liability of BOYD to our client for any and all claims or claims expenses from any cause will not exceed our total fee for services on this project.

Bronco went into bankruptcy in May, 2006, and Standard Bank provided debtor-in-possession financing. The reorganization was not successful and Standard Bank sustained losses of approximately $40 million.

Standard Bank's tort claims are barred by Colorado's economic loss rule. This case is controlled by the law announced by the Colorado Supreme Court in *BRW, Inc., v. Dufficy & Sons, Inc.,* 99 P.3d 66 (Colo. 2004). Here, as there, the duty owed by PAH to Standard Bank arises from the contract between Bronco and PAH as set forth in PAH's proposal of July 12, 2005 (Exhibit J) which Bronco accepted by payment of the $35,000 advance.

Standard Bank substituted itself for RBS in the transaction and accepted PAH as the independent engineer to evaluate the project.

Whether the relationship between PAH and Standard Bank governing PAH's duty is described as an implied contract, a third party beneficiary or a novation, the result is

the same.  PAH had no duty to Standard Bank other than that in the proposal that became the Bronco contract.  Standard has not sued for a breach of contract in this case.  Accordingly, its claims are dismissed.  The question of whether the limitation of liability is enforceable has been briefed but that question is irrelevant to the tort claims that are barred by the economic loss rule.

Upon the foregoing, it is

ORDERED that the plaintiff's motion for partial summary judgment is denied. The defendant's motion for summary judgment is granted and the Clerk will enter judgment for the defendant, dismissing this civil action and awarding costs to the defendant.

DATED:   January 28th, 2010

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge