IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-01989-RPM

STANDARD BANK, PLC,

      Plaintiff,

v.

RUNGE, INC., f/k/a RUNGE MINING, INC., and d/b/a PINCOCK, ALLEN & HOLT,

      Defendant.
_____

ORDER
_____

After this Court dismissed this civil action on the defendant's motion for summary judgment, Runge, Inc., f/k/a Runge Mining, Inc., and d/b/a Pincock, Allen & Holt (PAH) moved for an award of attorney's fees, costs and excess costs against the plaintiff Standard Bank, PLC ("Standard"), claiming entitlement under a contract between PAH and Bronco Energy Fund, Inc. (Bronco). More particularly, the claim is made pursuant to paragraph 14 of the standard Terms & Conditions containing a fee shifting provision favoring the prevailing party in a dispute related to the services provided under the agreement said to be part of that contract. Proceedings on the motion were stayed pending determination of Standard's appeal. The Tenth Circuit Court of Appeals affirmed this Court's ruling that Standard's tort claims are barred by Colorado's economic loss rule in an Order and Judgment entered on October 6, 2011.

PAH filed a supplement to its motion for attorneys' fees and costs on January 10, 2012. The issue of entitlement was separated from the amounts that may be awarded

by an order entered February 7, 2012. The entitlement issue has been fully briefed.[1]

The facts of this case are contained in this Court's Memorandum Decision of January 28, 2010, and the recitations in the Order and Judgment. The services provided by PAH were required by The Royal Bank of Scotland (RLB) as a condition of its proposed financing of Bronco's purchase of a coal mine in Hazelton, Indiana. PAH submitted its proposal to do an evaluation and performed its services after receipt of a $35,000 prepayment. There was no written contract signed by Bronco. After RLB declined the loan, Standard saw an opportunity to profit from financing the Bronco purchase and accepted the work of PAH. The loan closed, the purchase was made and Bronco filed for bankruptcy, resulting in a very substantial loss to Standard.

Standard filed this action to recover its loss by claiming that PAH was negligent in performing its work and negligently misrepresented the merits of the mine. This Court held that because the duty that PAH owed to Standard arose from the contractual duty to Bronco, the case was controlled by the decision of the Colorado Supreme Court in *BRW, Inc. V. Dufficy & Sons, Inc.,* 99 P.3d 66 (Colo. 2004).

The Tenth Circuit Court analyzed that Colorado court decision in its Order and Judgment and held that because the duty to provide professionally competent services in evaluating the mine set forth in the contract was the same as that alleged by Standard to have been breached by PAH, the economic loss rule barred tort claims even if Standard did not have a contract remedy.

---

[1] Costs that may be allowed pursuant to 28 U.S.C. § 1920 have been waived because PAH failed to file a Bill of Costs within 14 days from the judgment as required by D.C.Colo.LCivR 54.1.

In the present motion PAH argues that Standard is bound by the fee shifting provision in the Terms and Conditions in the Bronco proposal on one or all of the following grounds: (1) Standard and PAH entered into an implied contract which incorporated the fee-shifting provision in the PAH/Bronco contract; (2) Standard is bound by the terms of the PAH/Bronco contract as a third party beneficiary; (3) Royal Bank of Scotland was a third-party beneficiary of the PAH/Bronco contract and Standard succeeded to Royal Bank of Scotland's third party beneficiary status;(4) Standard directly benefitted from the PAH/Bronco contract and is bound by the fee-shifting provision under the principle of direct benefit estoppel.

There is an assumption in all of these arguments that these Terms and Conditions were a part of the Bronco contract. While this Court decided that the proposal became a contract when Bronco paid the $35,000 advance fee, it did not decide that the fee shifting provision in the Terms and Conditions was a part of the agreement. There was no need to make that decision. Indeed, early in this litigation PAH contended that a limitation of liability provision in the PAH standard Terms and Conditions was applicable and enforceable against Standard. That question was fully briefed by both parties in their respective motions for summary judgment.[2] It was never decided because the ruling on the scope of the economic loss rule barred this action entirely.

Colorado courts have strictly construed fee shifting agreements because they are in derogation of the American rule and their scope depends, in part, on the

---

[2]Standard moved for partial summary judgment on PAH's defenses (#135).

3

circumstances surrounding the formation of the contract.  There has been no evidence of any negotiations between PAH and Bronco and no occasion for this Court to determine whether it and the other PAH standard Terms and Conditions were accepted by Bronco.  In the absence of a finding that attorney's fees and costs would be recoverable from Bronco, the defendant's arguments for recovery from Standard are rejected.

PAH has moved for recovery of some of its attorney's fees and costs from plaintiff's counsel, Jones Day pursuant to 28 U.S.C. § 1927.  That section provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

PAH argues that Jones Day unreasonably and vexatiously multiplied the proceedings when Standard challenged the existence of a contract between PAH and Bronco in response to PAH's Rule 12 motion to dismiss.  In particular, PAH focuses on the following statement in Standard's response to that motion:

> PAH's Motion To Dismiss is the first time that either party [Bronco or PAH] had put Standard on notice of the Proposal and T&C…. The lack of notice is significant. Research has not revealed a single case… where the non-signatory did not have notice of the written agreement between the alleged signatories.

(Pl.'s resp., # 14 at 20-21.)  PAH accuses Jones Day of misrepresenting Standard's knowledge of the PAH/Bronco contract, pointing to handwritten notes prepared by Standard loan officer Michael Hutchings.  (Ex. 13 to Pl.'s resp., #136-32.)  Hutchings' notes reflect a series of conversations he had in September and October 2005, when Standard was evaluating whether to become involved in Bronco's acquisition of the

4

Hazleton Mine. Hutchings' notes indicate that he inquired about the nature of PAH's engagement and was told that PAH had a contract with Bronco and the work was being done on behalf of Royal Bank of Scotland. (*Id.* at p. 4 of 5.)

PAH argues that if Jones Day had been forthright about the existence of the PAH/Bronco contract when it crafted Standard's response to PAH's Rule 12 motion, this court would have dismissed Standard's complaint at that early stage, and further proceedings would not have been required.

The PAH motion to dismiss was made under Fed.R.Civ.P. 12(b)(1) and 12(b)(3) based on the contention that the mandatory forum-selection and alternative dispute resolution provisions in PAH's standard Terms and Conditions required dismissal. Alternatively, PAH invoked Rule 12(b)(6) on the grounds that as a third party beneficiary of a contract between PAH and Bronco the tort claims were barred by the economic loss rule or, if not, there was no privity of contract between Standard and PAH.

It was indeed something of a stretch for plaintiff's counsel to deny the existence of a Bronco contract but that was not the basis for this Court's denial of the motion.

The course of this litigation concerned disputes over the nature and scope of the relationships between PAH and Bronco and PAH and Standard. That was due, in large part, from the fact that PAH failed to obtain a signed written contract with Bronco or Standard contrary to its usual procedures. In the absence of a signed contract, it was not improper for Standard/Jones Day to challenge PAH's contention that the July 12, 2005 proposal defined the PAH/Bronco relationship. It certainly was not improper for Standard/Jones Day to challenge PAH's contention that the PAH standard Terms and Conditions were binding on Standard.

Much of the discovery and motions practice in this case resulted from the fact that both parties failed to take any precautions in defining their relationship, apparently in Standard's haste to seize what it thought was a golden investment opportunity and PAH's assumptions based on past dealings with Standard.  The ultimate decision ending this lawsuit came after this Court's suggestion at an oral argument on discovery disputes on July 29, 2009, that the economic loss rule be briefed.

Jones Day did not multiply these proceedings unreasonably or vexatiously.  Accordingly, it is

ORDERED that the defendant's motion for an award of attorney's fees, costs and excess costs [#167] as supplemented [#189] is denied.

DATED:   August 9th, 2012

                                      BY THE COURT:

                                      s/Richard P. Matsch

                                      _____
                                      Richard P. Matsch, Senior Judge